Good morning. May it please the court. My name is Diane Weisberg. With me today is co-counsel Jerry Weisberg and Ms. Daniels, who is also co-counsel, has the flu and didn't want to infect the court. I've only asked for 10 minutes because I want to emphasize the chilling effect on parents' rights to record IEP meetings and the fact that in this particular case the co-defendants elected to try to gain leverage in an appeal from an OAH decision in order to effectuate a change and to stop the appeal. What has happened to the main case? The main case is had most of its briefing done. The last briefing is due today, as a matter of fact, and there is a trial date on the MSJ set for the end of April. That's the current status right now. The court has elected to stay this portion or the cross-complaint pending the decision of the Ninth Circuit or whatever decision any higher court chooses to make. But my emphasis here is on the discrepancy, huge discrepancy, between what parents claim is said during an IEP meeting and what the school district claims. The school district is making the notes, they're the scribe, they have all the power, the parents have none. I didn't understand the school district to be objecting to your overall right to record. They had their recorder there as well. Absolutely. So the whole objection here is that the father was in the room, the mother and her counsel left, and the recorder was still going. Nobody had ever established any rules regarding recording. Nobody said we turn them off when we take a break, we start them back up when we come back from lunch. The recording was sitting right in front of the school district. Because I understand, at least with respect to the merits of their counterclaim, that it was an unintentional recording on your part. Correct? But you're up here on a, you've appealed the district court's denial of a motion to strike. Right. Right? Right. So why did the district court err? The district court erred for this was to record or not. That's not the issue in front of this court, or that one. The issue is does a parent have the right to record, and under 632, it's not a violation. So that's not really the issue now, is it? Listen to Judge Pius' question. Okay. Let's just assume that that unintentional recording is protected. Okay? Why, what's the public interest here? The public interest is... What's the public issue here? The public... This was a private setting, correct? No. No, it wasn't. All right. It was in the middle of a school room where people were coming and going all the time. There were 17 team members that came and went during this alleged confidential communication. It's not a public meeting. It's not like a school board meeting. No. This is a meeting that's supposed to be limited to the people interested in that question. Or whoever is invited to attend. Frequently, you have therapists, you have psychologists... But they're invited to attend because they're interested or they're engaged with the child in question. Or sometimes there's students there from local colleges and universities who attend. There's frequently people that ask to attend these meetings. The question I'm trying to put to you is that there's a specific argument made in the answering brief, I can even probably identify where it's made, that raises the question of whether this qualifies as a matter of public interest under the statute. Okay. And I read the reply brief, I see nothing whatsoever regarding that. I specifically talk about, in the reply brief, the public interest issue in the opening brief and briefly in the reply brief about the fact that this is about parents' access to the courts. No, stop. The question posed, at least the challenge posed in the answering brief, is that the private conversations recorded here were not, quote, in connection with a public issue or an issue of public interest, close quote. You're trying to tell me that the broader legal question, like any precedent from this court or any other court, might impact another case. But that's not the question being, or the challenge being raised by the answering brief and that I'm trying to get you to address here, which is that what is it about this conversation that was a matter of public interest? The public interest of that conversation had to do with the rights and remedies to a child to receive a free, appropriate public education, and his father was sitting right there in the room. That child, right? Doesn't have to do with the rights of any other child. That meeting was specifically about D.N. That meeting was about D.N., but the effect of this, of bringing a counterclaim to stop D.N. or any parent from bringing a lawsuit. That makes the counterclaim a matter of public interest, but it doesn't make the conversation being recorded something that's a matter of public interest. It goes to the courts and the, especially the court's opinions regarding this leverage that school districts have against children. That's what the main thrust is here. This is another attempt to circumvent children's rights and parents' rights and find a back the right of a parent to record or to bring an action. That's the public interest. Now, what is your home run case? We've read your, the briefs, and is there a case which you can point us to which says that the conversation here involving a child was a matter of public interest? What is your home run case? There is no home run case. It's a matter of first impression to the courts, Your Honor. I'm just curious. Have you checked out other states? I checked other states. I checked as late as yesterday afternoon, Your Honor. There is no case on this issue directly. It's, I've never seen it come up before. California's one of the few states that has a statute that specifically allows for the recording of IEP meetings. It also says in that statute, notwithstanding 632 of the Penal Code, it goes to the legislative intent of the statute under Education Code 56341.1G.1. It goes to the legislative intent and that's what this court needs to honor. The reasons the California legislature wanted this statute in place to protect parents' rights. They wanted them to be able to record so if they're, and use it. The statute specifically says use it in subsequent proceedings. That's the other part that makes this public. A need for the public to be able to access the courts. Unless the court has any other questions, I have nothing further. Okay. That's fine. Thank you. Good morning. May it please the court. Sue Ann Evans for Los Angeles Unified School District. This case is not about recording an IEP meeting. The definition of IEP is that the school district has no issue with recording IEP meetings and agrees that the Education Code allows for that. What the Education Code does not allow for is recording outside an IEP meeting. An IEP meeting convenes when all of the members that are interested in the particular student's individualized program are together and agree to start the meeting. They do take breaks, they do take lunches, and recording is stopped. That's common. Well, you say recording is stopped, but recording doesn't have to be stopped. I mean, tape recorder's sitting there, it's still going. I read the transcript of this one and somebody makes a point of saying, is it stopped? But if a recorder's sitting there and still running, what makes that an illegal or unlawful act? Well, a couple of things. One, the person who is doing the recording has a responsibility to ensure that their recording is within the parameters authorized by the statute. Wait a minute. What statute says you can't record at other times? What statute says the recorder can't be left running? The statute says that you can record an IEP meeting. It doesn't say anything about recording anything else. Exactly. It doesn't say anything about recording private. You need permission to record? You need permission and consent to record a private conversation. Absolutely. And that's 632, and that's what our case is about. Penal Code 632. I've got to tell you, this strikes me as one of the silliest counterclaims I've ever seen. How was LAUSD injured? You know, I appreciate the court's comment. It is not an easy thing to do to bring a counterclaim in a situation like this. It is rare. It seems to me it's exactly as described. It's being used as a device to try to obtain leverage. What's the point of this? No, that is not accurate. The purpose of it is this was a privileged conversation. The courts and law make knowledge. How was LAUSD injured? Because it's privileged communication was recorded, was then transcribed, and then was attempted to be used against it. I'm still waiting to hear about the injury. The injury is the fact that it's privileged conversation. We talk about chilling. The courts have long discussed the importance of the attorney-client relationship, the ability to have confidential communications, as was laid out in the declarations here, to strategize about cases, about law, and about how to handle situations going forward. Was there a physical injury? No, but an injury to the relationship. Was there an injury of any kind, an actual injury in the context of this case? Well, I will tell you that under 632, Penal Code 632, the injury is assumed. You don't need to show any actual harm for damages. I'm not quite so sure. Read that statute, because the word injured, the injured party, so there's some injury. There may be a private right of action that permits you to recover some liquidated damages or specified amount, but the presumption is still that there's some injury suffered. If somebody overhears a conversation, does that make the person whose conversation was overheard automatically injured? Well, that's a different issue, because it is not being recorded. And here we have a situation where counsel was meeting with her client, had informed the counter-defendants that they were going to confer, that she needed them to leave the room so that they could have their conference. Makes a point of checking that their own recorder's been turned off and doesn't bother to check to see if the other recorder is turned off. Strikes me as unusually sloppy, and probably shame on whoever it was that decided to have a privileged conversation knowing that there's a tape recorder sitting on the table. Well, I think there may be a picture in your mind of a recorder like the old-fashioned push-the-buttons. There's a big recorder. It probably makes a lot of noise while it's recording. That's not what we're talking about. It's actually a phone. Did your client not know that there was a recorder sitting on the table? Did not know that the recorder was being used. That's the question I asked just yet. Did your client not know that there's a recorder sitting on the table? No, I can't say that. I can say that they... So if they knew that the recorder was sitting on the table, knew that they had their own asking if their own recorder had been turned off, but never bothered to check with the other recorder, whose fault is all of this? In terms of talking about the recording, one... Well, let me take that piece by piece. In talking about the recording, that was a discussion to the whole group. That is, recording is off. We're off the record, right? Is it incumbent upon the district to go over and verify that and pick up somebody's personal phone and verify whether it is turned off? If you're going to have a confidential conversation right there where they know a recorder is going, I'd say the answer to that question is yes. That's the only practical way to respond to the situation. But like I say, I have not been persuaded this counterclaim is anything less than silly in an attempt to intimidate. So you're free to try to argue with me or my colleagues, but there you are. Why doesn't the process by which officials adopt a finding of autism for a student in an IEP case constitute an issue of public interest? Because it is very personal to an individual. I'm talking about the process, yeah. To the individual student. Do you mean the process, the IEP meeting process? The finding, yes. I think that is a matter of statute and a matter of law, how those procedures go forward. But what happens in an IEP meeting is not public. It is in fact protected by FERPA state law and federal law. So there's nothing public about communications that are going on in  It makes it sound like anybody can just walk in. No, that's not correct. I understand the argument, and frankly that comes outside of the record, but IEPs... are designed to develop the individualized educational program for that particular student. Each one is different, and the people that are allowed to attend are those that have the ability to assist in developing the goals for the student in that educational program. So it's not interns from some college that just happen to want to sit in on an IEP meeting. That's not the case. These are very much, as I said, protected information by under FERPA and state law. That by definition this can never be an issue of public interest? The way you're framing this, I'm just wondering. What is the implication of this? The question of the ability to record outside an IEP meeting, I think your point earlier made was that in and of itself the law on that matter could be a matter of public interest, but what happens in an IEP meeting is not a matter of public interest. And just to the point of furthering the constitutional rights, we've briefed this, but I want to reiterate that it's the recording and not the publication. That said, there's the Flatley case that we did not cite in our papers, unfortunately, but that is the case that holds that if it's illegal conduct, and here we've alleged the violation of Penal Code 632, it's not protected by the Constitution and cannot be in furtherance of constitutional rights. To the district, to your point as well about the district court ruling, it was not addressed by appellants. The court sifted through a lot of, I agree, I think there was a lot of extraneous things submitted with the record, and I think both sides are guilty of that to some degree, but he denied it on a very straightforward basis. That their contention that this was an inadvertent recording is inconsistent with the allegation that it was in furtherance of their constitutional rights. That gets to the merits of the underlying counterclaim. I'm sorry? That gets to the merits. Well, I think it also goes to... Do you need to prove that it was an intentional? I do. And she claimed that it was unintentional, so it gets to the merits of the underlying claim. I'm not suggesting that that's a finding for purposes of the 632 claim. What I'm saying is that the court found that you cannot have it both ways, as counter defendants want to assert that it was inadvertent on the one hand, and on the other hand, that it was in furtherance of their constitutional rights. Would you step on this slap, anti-slap motion? Right, exactly. That's all. Exactly. So I am focused on the furtherance of the constitutional right, and saying... Time is up. My time is up. Thank you. You have a minute left, I believe. A little over a minute. Did you wish to say anything? Did you use that time? I want to say one thing about something counsel brought up. I brought up in the papers, as the court said, the issue about accidental or inadvertent recording during that lunch period. But there was nothing precluding my client from listening to the tape. And in fact, as the brief says, but for LAUSD's request to check that tape that day, I probably would not have even listened to it. That's why. That means that the action taken later was surely intentional. Even if the initial recording was accidental, there was intentional action thereafter. But the statute specifically allows you to use the recording. As counsel said... Unless you use the recording of the IEP meeting, the statute doesn't talk about the right to record and utilize conversations during breaks, or in this case, during a confidential communications of the school district. But once again, Your Honor, it couldn't have been confidential if Mr. Nguyen was sitting right there in the room. It looks like he left the room. They make a point of saying, are we alone? Yeah, we're alone. So I'm having a little trouble with the notion that he was there all the time. There's no time on that recording, Your Honor, where they ask him to leave the room or he's heard leaving the room. But there is a time when somebody says, are we alone? And the answer is yes. And there's a time he comes back later. I've got to say, the whole recording struck me as not very interesting. We got a fair number of complaints that I hear regularly from my own wife about husbands and boyfriends and lots of other discussion and kind of chatter that takes place over lunch. But this whole counterclaim and anti-SLAPP, defense of the counterclaim and so forth, strikes me as an enormous diversion of resources that could be better spent taking care of D.N. and other children. I thoroughly agree, Your Honor. But here we are on your appeal. Here we are. Thank you. The matter is submitted at this time. Thank you, Counsel. Appreciate your
judges: Paez, Clifton, Katzmann